UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TIMOTHY PATRICK McENANY, :
:
    Petitioner :
:
  v. : CIVIL NO. 3:CV-05-1160
:
DAVID DiGUGLIELMO, : (Judge Kosik)
:
    Respondent :

## **M E M O R A N D U M**

**I.   INTRODUCTION**

Timothy Patrick McEnany, an inmate currently confined at the State Correctional Institution at Graterford (SCI-Graterford), Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 1997 conviction for Second Degree Murder and related offenses in the Dauphin County Court of Common Pleas. Respondent is David DiGuglielmo, Superintendent at SCI-Graterford. The timeliness of the petition is conceded. (Doc. 8.) On January 31, 2006, a response to the petition and voluminous supporting exhibits were submitted by Respondent. (Doc. 12.) A traverse was filed by Petitioner on February 22, 2006 (Doc. 13.) The matter is now ripe for disposition. For the reasons that follow, the petition will be denied.

**II.   BACKGROUND**

The facts of this case are extracted from the opinion of the Pennsylvania Superior Court dated November 8, 1995, Commonwealth v. McEnany, No. 0856 Harrisburg 1994 (Pa. Super.), which addressed Petitioner's initial direct appeal from his judgment of sentence, and are as follows:

>On March 4, 1993, at 12:45 a.m., eighty-two year old Kathryn Bishop was found dead on the floor of her residence. Wayne K. Ross, a

forensic pathologist, determined that Mrs. Bishop had been stomped to death sometime between 9:00 p.m. and 11:30 p.m. on March 3, 1993. Paint chips were found on Mrs. Bishop's hands, and black t-shirt fibers were on her face, neck and clothing. Additionally, Mrs. Bishop's kitchen door window had been smashed, her basement window had been opened and scuff marks were left on her clothes dryer which was located just below the basement window.

Subsequent investigation revealed that the appellant, Timothy McEnany, and his cousin, Andrew Reischman, were at Mrs. Bishop's residence to clean her chimney between the hours of 2:00 p.m. and 5:00 p.m. on March 3, 1993. While appellant and Reischman were cleaning the chimney, Mrs. Bishop and her daughter, Janet Seitz, were discussing Mrs. Bishop's finances. At this time, one of the workers was in the house. There was a large roll of paper money and a basket full of change owned by Mrs. Bishop in plain view. Mrs. Seitz and her husband left Mrs. Bishop at approximately 5:00 p.m. At that time, appellant and Reischman were still present at the house.

During the time period between March 4, 1993 and March 7, 1993, Trooper Jeffrey Stansfield spoke with appellant regarding his contact with Mrs. Bishop on March 3, 1993. Appellant told Trooper Stansfield that he had been to Mrs. Bishop's residence on March 3, 1993 to clean her chimney. Appellant also stated that he was at a bar called Shane's Flight Deck between the hours of 6:30 p.m. and 1:30 a.m. on the evening of the murder. The bar is located about fifteen (15) miles from Mrs. Bishop's residence and over sixty (60) miles from appellant's home. A cook from Shane's saw appellant at the bar around 6:00 p.m. that evening, but not after that time. A bartender from Shane's testified that she saw appellant after midnight that evening and that he was acting in a manner to ensure that his presence was noticed.

Officers then spoke with Mrs. Bishop's neighbor, Dawn Rogers, who stated that she heard the sound of breaking glass between the hours of 10:00 and 10:30 p.m. on March 3, 1993. A couple of minutes later, Mrs. Rogers saw a person running down the street from the direction of Mrs. Bishop's house, carrying a clear bag containing a large envelope. Mrs. Rogers' description of this person matched the general description of Reischman.

On March 7, 1993, at approximately 10:25 a.m., Corporal Lester Freehling and Trooper Stansfield arrived at appellant's house and asked him if he would accompany them to the police station. At that time, Corporal Freehling told appellant that he was not required to go, that he was not under arrest and that the officers would bring him home at any time. Appellant agreed to go with the officers. The

officers and appellant arrived at the police station at approximately 11:15 a.m. Then, Corporal Freehling, as a precaution, gave appellant a <u>Miranda</u> form and, once again, told him that he could stop the questioning at any time. Appellant said that he understood his rights and signed the waiver form. Corporal Freehling interviewed Appellant until 1:00 p.m. regarding events surrounding and leading up to the evening of March 3, 1993. At no time was appellant handcuffed or otherwise physically restrained.

At 1:00 p.m., Trooper McElheny met with appellant and requested that he take a polygraph examination. Appellant agreed, and Trooper McElheny then explained the examination to him for about an hour. Prior to administering the exam, Trooper McElheny obtained appellant's written consent as well as his signature on another <u>Miranda</u> form. The exam lasted from about 2:00 to 5:00 p.m., at which time Trooper McElheny informed appellant that the results of the test indicated that he was not telling the truth. Appellant was not arrested at this time nor was he told that he could not leave.

At 5:10 p.m., Corporal Freehling rejoined the questioning, and, at 5:30 p.m., he proposed the possible scenario to appellant which follows: While appellant and Reischman were working at Mrs. Bishop's house, Reischman had seen a lot of money on the dining room table. Appellant and Reischman had gone to Shane's bar and started drinking. Reischman told appellant about the money and suggested that they rob Mrs. Bishop. The two went back to Mrs. Bishop's house where Reischman was dropped off, and appellant waited nearby in the van. Reischman returned with the money and did not tell appellant that he had killed Mrs. Bishop. Appellant first learned of her death when the two troopers arrived at his house. Corporal Freehling then said, "This may not be actually how it happened, but is pretty close to the truth, isn't it?" Appellant immediate response was, "Yeah, I want to tell you what happened." Corporal Freehling stopped the questioning and left the room. At this time, appellant blurted out to Trooper McElheny, "It's that fucking beer. Every time I drink I get in trouble. I really fucked up this time." Thereafter, Corporal Freehling returned and began to advise appellant of his constitutional rights. Before he could finish, appellant interrupted him and said that he wanted to do the right thing and that he knew what the right thing was. Appellant further stated that he wanted to tell what happened, but he didn't want to do anything "stupid" and wanted an attorney present before he made a statement. All questioning of appellant then ceased.

As the investigation continued, Trooper Stansfield obtained search warrants for appellant's van and residence. From appellant's residence, officers seized the clothes worn by appellant on March 3, 1993. Investigation of appellant's clothing revealed paint chips in the pocket of appellant's jacket. Paint analysis expert, John Evans,

3

> testified at trial that the paint chip found in appellant's jacket pocket were consistent with chips found on Mrs. Bishop's hands. The chips found in appellant's jacket and on Mrs. Bishop's hands were also consistent with the peeling paint around the broken basement window. Chemist, Lee Ann Grayson, testified that fibers found on Mrs. Bishop's body matched those of the t-shirt appellant wore on the day of the murder.
>
> Pursuant to the search warrant for the van, officers seized appellant's cellular phone. Investigation of the memory of appellant's phone revealed that the last number dialed was Mrs. Bishop's home telephone number. A subsequent search of appellant's phone records revealed two unanswered calls made to Mrs. Bishop's residence at approximately 10:07 p.m. on the night she was murdered.

(Doc. 12, Ex. L at 3-7.)

On October 19, 1993, a jury found Petitioner guilty, but the conviction was reversed on November 8, 1995, by the Pennsylvania Superior Court on direct appeal based on an improper reference to Petitioner's post-arrest silence. (Id.) The Pennsylvania Supreme Court granted in part Petitioner's Petition for Allowance of Appeal, however the appeal was dismissed as improvidently granted.

A second jury found Petitioner guilty of Second Degree Murder and related offenses on September 18, 1997. Petitioner was sentenced to life imprisonment for the second degree murder conviction, with a consecutive aggregate term of 3 - 10 years incarceration for the burglary and criminal conspiracy convictions.. The judgment of sentence was affirmed by the Pennsylvania Superior Court on direct appeal on May 13, 1999. (Doc. 12, Ex. L.) On March 28, 2000, the Supreme Court of Pennsylvania granted appeal "limited to the issue of the admissibility of Petitioner's cellular phone, cellular phone memory chip and cellular phone records." (Doc. 12, Ex. X.) The Court later dismissed the appeal as improvidently granted. (Id., Ex. AA.)

On July 23, 2001, Petitioner, acting pro se, filed a petition for relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541, et seq. (Id., Ex. BB.) The following

4

day, PCRA counsel was appointed. (Id., Ex. CC.) An amended PCRA petition was filed on November 19, 2001. (Id., Ex. DD.) On December 30, 2002, following an evidentiary hearing, the PCRA relief was denied. (Id., Ex. EE.) On June 9, 2004, the Pennsylvania Superior Court affirmed, and no petition for allowance of appeal to the Pennsylvania Supreme Court was filed by Petitioner. (Id., Ex. GG.)

The instant habeas petition was filed on June 9, 2005, and raises sixteen (16) grounds for relief. Eight (8) grounds assert trial court error . Petitioner sets forth two (2) challenges to the alleged improper search of Petitioner's van, home, cellular phone memory chip and cellular phone records. He further raises challenges to the sufficiency of the evidence, as well as contends the trial court abused its discretion in sentencing. In addition, four (4) ineffective assistance of trial counsel claims are asserted. Respondent maintains that the petition should be denied as the claims were either based entirely on state law, procedurally defaulted and/or do not warrant federal habeas corpus relief.

## III.   DISCUSSION

### A.   Exhaustion/Procedural Default

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-68 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

Habeas corpus relief cannot be granted unless all available state remedies have been

5

exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). The exhaustion requirement is satisfied if a petitioner's claims are either presented to the state courts directly on appeal from the judgment of sentence, or through a collateral proceeding, such as a PCRA petition; it is not necessary for a petitioner seeking federal habeas relief to present his federal claims to state courts both on direct appeal and in a PCRA proceeding. Evans v. Court of Common Pleas, 959 F.2d 1227, 1230 (3d Cir. 1992). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989). The factual and legal substance of the federal claim must be presented to the state courts in a manner that puts them on notice that a federal claim is being asserted. See Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 277-78 (1971). It is not sufficient that a "somewhat similar state-law claim was made." Harless, 459 U.S. at 6. Fair presentation also requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits. Castille, 489 U.S. at 351.

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297-98 (1989). Although deemed

6

exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160. A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 f.2d 853, 861-62 (3d Cir. 1992).

In reviewing the record, it appears that Petitioner has procedurally defaulted five (5) of the grounds raised in the instant petition. In Ground 4, Petitioner alleges that the trial court committed error in admitting the cellular phone records, which were computer-generated printouts, because they constituted hearsay and did not fall within any exception to the hearsay rule. While this issue was addressed in the second direct appeal to the Superior Court, it was not presented in Petitioner's Petition for Allowance of Appeal to the Supreme Court and is now procedurally defaulted.[1]

Grounds 9 and 10 have also been procedurally defaulted. In Ground 9, Petitioner alleges that the trial court committed error in refusing to charge the jury that prior inconsistent statements of witnesses could be considered as substantive evidence and for impeachment purposes of said witnesses. In Ground 10, trial court error is alleged for failure to instruct the jury that the Commonwealth has the burden to disprove Petitioner's alibi beyond a reasonable doubt. While both of these issues were raised in Petitioner's first direct appeal to the Superior Court, they were not

---

[1] In his Petition for Allowance of Appeal, Petitioner raised the issue that the cellular phone records were obtained in violation of the Pennsylvania Rules of Criminal Procedure, specifically challenging the legality of the subpoena used to obtain the records. He did not raise the issue of the cellular phone records being hearsay. As such, the issue was not presented to the Supreme Court. Pursuant to Pennsylvania Supreme Court Order 218, issues presented to the Superior Court are considered exhausted for the purpose of federal habeas corpus relief under section 2254. However, Order 218 became effective as of May 9, 2000, and is not retroactive. See Wenger v. Frank, 266 F.3d 218 (3d Cir. 2001). Therefore, in this case, Petitioner was required to present his issue to the Supreme Court, and failed to do so.

7

addressed because the court remanded the case for a new trial finding trial court error when it permitted the Commonwealth to introduce evidence which impermissibly commented on Petitioner's right to remain silent. (Doc. 12, Ex. L at 2.) As such, both of these issues became moot. Following remand and the second trial, Petitioner never pursued these issues in his second direct appeal. The time for presenting these claims has expired as Petitioner's judgment became final on August 18, 2001, and no Pennsylvania court has jurisdiction. There is no basis asserted for excusing the procedural defaults.

In Ground 11, Petitioner challenges the sufficiency of the evidence in proving beyond a reasonable doubt that he committed the crimes charged and also that the verdict was against the weight of evidence. This issue was presented in the direct appeal following Petitioner's first trial. Following the new trial, Petitioner never pursued a sufficiency of the evidence claim in his second direct appeal. He has procedurally defaulted this claim as well.

Petitioner claims in Ground 12 that the trial court abused its discretion by imposing consecutive sentences for burglary and criminal conspiracy to the Second Degree Murder life sentence because all of the offenses were committed as a single criminal episode. He further maintains that the court did not set forth reasons justifying its actions. While this issue was raised by Petitioner in his direct appeal following the first trial, the Superior Court did not address it because the matter was remanded for new trial for the reasons previously set forth. Thereafter, following his second trial and conviction, Petitioner did not raise any challenge to the judgment of sentence in either his second direct appeal or his PCRA petition. Review of this claim is precluded because it is now procedurally defaulted and there is no basis for finding "cause and prejudice" or a "miscarriage of justice."

**B.    Habeas Claims**

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an

application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was "contrary to" federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an "unreasonable application" of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id. Further, factual determinations made by the state court are "presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner may only rebut this presumption with "clear and convincing evidence" of the state court's error. Id.

### 1. Trial Court's State Law Rulings

Many of the grounds raised by Petitioner allege trial court error with regard to state law evidentiary rulings. These grounds are as follows: Ground 1 - Doctrine of law of the case; Ground 2- Reading the Opinion of the Pennsylvania Superior Court on first direct appeal; Ground 3 - Admitting evidence of a prior conviction; Ground 4 - Admitting cell phone records; Ground 7 - Denying Petitioner's motion to suppress certain cell phone records; Ground 9 - refusing to charge jury regarding prior inconsistent statements of witnesses; Ground 11 - sufficiency of evidence to support verdict; and Ground 12 - Abuse of discretion at sentencing.

As a general rule, State evidentiary rulings do not implicate Federal law and are therefore not

cognizable in a federal habeas proceeding. See Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997); Geschwendt v. Ryan, 967 F.2d 877, 888-89 (3d Cir. 1992); Hawkins v. Carroll, No. 03-1165-KAJ, 2005 WL 3336538, at *3 (D. Del. Dec. 8, 2005)(finding a violation of state evidentiary law is not cognizable in a federal habeas proceeding); Brown v. Donnelly, 371 F.Supp.2d 332 (W.D. N.Y. 2005).  Rather, such rulings are generally left to the discretion of the trial court.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  Thus, this court may review a State court's allegedly erroneous evidentiary ruling only if it was so egregious that it rendered the petitioner's trial fundamentally unfair, in violation of the due process clause of the Fourteenth Amendment or the compulsory process clause of the Sixth Amendment. See Chambers v. Mississippi, 410 U.S. 284, 302-03 (1973); Rosario v. Kuhlman, 839 F.2d 918, 924-25 (2d Cir. 1988)([E]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus.  Rather, the writ [should] issue only where [the] petitioner can show that the error deprived [him] of a fundamentally fair trial.")(emphasis in original)(quotation marks and citation omitted).

  Prior to his first trial, Petitioner filed an omnibus pre-trial suppression motion seeking to suppress all evidence obtained by the police as a result of the search of his van and residence.  The motion was denied. On direct appeal, this ruling was affirmed, however the judgment of sentence was reversed and remanded for a new trial due to impermissible comments on Petitioner's right to remain silent as discussed above. Prior to the second trial, Petitioner filed a second omnibus pre-trial suppression motion raising the same issues argued in the first motion.  The trial court refused to consider the motion finding the issues had been previously litigated in the first omnibus motion.  In Ground 1,  Petitioner claims error on the part of the trial court in doing so.  The state court found that Petitioner was barred from relitigating the admissibility of evidence previously decided when the second suppression motion is based on the same issues previously decided in the first omnibus motion. In affirming this ruling, the Pennsylvania Superior Court cited to the law of the case

10

doctrine, and specifically concluded that the trial court properly denied reconsideration of the issues particularly in light of the fact that the motion was not based on any newly discovered evidence and failed to cite any changes in the law. Thus, if the issue was reviewable in this court, clearly no error was made.

In Ground 2, Petitioner basically asserts that the trial court misread the Superior Court's opinion in the first direct appeal and erred by admitting statements that the Superior Court had held were inadmissible as impermissible comments on Petitioner's right to remain silent. In finding Petitioner's argument to be without merit, the Superior Court relied upon the strong reasoning set forth by the trial court in evaluating the Superior Court decision on the first direct appeal as to what testimony was inadmissible. (Doc. 12, Exh. V at 8-12.) A review of this language fully supports the trial court's ruling that only the testimony regarding whether Petitioner gave a statement constituted an impermissible comment upon his right to remain silent, and that statements made by Petitioner prior to that evidence had not been overturned by the Superior Court on the first direct appeal. (Id. at 11.)

In Ground 3, Petitioner challenges the trial court's admission of evidence of his April 25, 1986 conviction for theft by receiving stolen property because it was more than ten years old at the time of his second trial and, therefore, could not be used to impeach him. The trial court allowed the evidence because Petitioner's intervening incarceration for another offense was found to have tolled that time period. On direct appeal, citing precedential case law on the admissibility of evidence of prior convictions, see Commonwealth v. Randall, 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987), Commonwealth v. Jackson, 526 Pa. 294, 296, 585 A.2d 1001, 1001-02, the Superior Court reasoned that the two years Petitioner spent in prison while his appeal was pending in said court do not count toward the passage of the ten year period, and as such it was per se admissible to impeach his credibility at his trial on remand. In the alternative, due to the importance of Petitioner's credibility

11

and the limited prejudice of a single misdemeanor conviction, it was concluded that the probative value of the 1986 conviction substantially outweighed any potential prejudicial effect justifying the admission of the evidence of the conviction to impeach Petitioner's credibility, even if the ten year period for per se admissibility had expired. (Doc. 12, Ex. V at 16-17.) Based upon the record, the state court decision to admit this evidence was not in error.

In Grounds 4 and 7, Petitioner challenges the admission of cell phone records on the basis of hearsay evidence and use of an illegal subpoena. The court has previously found Ground 4 to be procedurally defaulted. Even if it had not been procedurally defaulted, no error was committed in admitting the records as the business records exception to the hearsay rule applies. (Id. at 17-20.) In Ground 7, Petitioner challenges the use of an illegal subpoena to obtain the cell phone records. Even if this state court evidentiary ruling were reviewable by this court, which it is not for reasons set forth both previously and subsequent hereto[2], a valid search warrant issued in this case without need to rely on any information obtained pursuant to the subpoena.

Petitioner alleges in Ground 9 that error was committed when the trial court refused to charge the jury that prior inconsistent statements of witnesses could be considered as substantive evidence and to impeach said witnesses. This is a matter of state evidentiary law, and not reviewable by this court. More importantly, the court has previously found this issue to be procedurally defaulted as are Grounds 11 and 12, Petitioner's challenge to the sufficiency of the evidence and his consecutive sentences, respectively.

Even if this court were to have found error with regard to any of the trial court's rulings, Petitioner would be hard-pressed to demonstrate that the error deprived him of a fundamentally fair

---

[2] See discussion to follow regarding application of Stone v. Powell, 428 U.S. 465 (1976) which precludes Petitioner from seeking habeas relief where he had a fair opportunity to present his Fourth Amendment claim in state court.

trial given the strong evidence connecting Petitioner to the crimes.

        2.        <u>Fourth Amendment Claims</u>

In general, State court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976) (footnotes omitted); <u>see also</u> <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1491 (3d Cir. 1994); <u>Gilmore v. Marks</u>, 799 F.2d 51, 57 (3d Cir. 1986). The Court in <u>Stone</u> did not directly state what it means to have a full and fair opportunity to litigate a Fourth Amendment claim in state court. However, the Court cited <u>Townsend v. Sain</u>, 372 U.S. 293 (1963). <u>Stone</u>, 428 U.S. at 494 n.36.

In <u>Townsend</u>, the Court held that a full and fair hearing does not occur if :(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; (6) for any reason the state trier of fact did not afford the habeas applicant a full and fair fact hearing." 372 U.S. at 313; <u>see also</u> <u>Deputy</u>, 19 F.3d at 1491. The Third Circuit has concluded that a habeas petitioner had an opportunity for full and fair litigation where the state court provided an opportunity for a pretrial suppression motion and the Superior Court considered the claim on appeal. <u>Reinert v. Larkin</u>, 211 F.Supp.2d 589, 597 (E.D. Pa. 2002), <u>aff'd</u>, 379 F.3d 76 (3d Cir. 2004).

Grounds 6 through 8 fall under the principles set forth in <u>Stone</u>. All three grounds were raised by Petitioner in pretrial suppression motions and fully addressed by the Superior Court in Petitioner's first direct appeal. (Doc. 12, Ex. L.) In Ground 6, Petitioner challenges the searches of

13

his van, home and cell phone records as improper in that the search warrants were not supported by probable cause. The Superior Court found the record to fully support the trial court's denial of the motion to suppress in that the affidavit of probable cause contained such evidence as the following: Petitioner and his cousin were the last two people to see the victim alive; the van was at the scene of the crime; and Petitioner agreed with a scenario in which the van was used to commit the crime. Further, the affidavits demonstrated that there was evidence which would be found in Petitioner's residence and phone records including his clothes, proceeds from the burglary and a record of the call made to the victim's house. Ground 7 challenges the subpoena to acquire the phone records and has been discussed above. Further, the Superior Court fully addressed this matter on the first direct appeal. The Superior Court also found the issue raised by Petitioner in Ground 8 - the challenge to the search of the memory chip from his cell phone - to be without merit. In so holding, the state court cited to the holding of <u>Commonweatlh v. Copenhefer</u>, 526 Pa. 555, 561, 587 A.2d 1353, 1356 (1991), for the principle that a warrant authorizing the seizure of a personal computer authorizes reproduction of the documents stored within and applied this holding through analogy to the cell phone/memory chip. (Doc. 12, Ex. L at 12.)

        3.    <u>Merits of Remaining Claims not previously addressed</u>

Five grounds raised in the instant petition for writ of habeas corpus are exhausted and do not fall within one of the categories previously discussed by the court. These grounds will now be addressed on the merits. The first issue is Petitioner's contention in Ground 5 that the trial court committed error in precluding him from introducing evidence that his alleged accomplice/co-conspirator had not been charged with the crimes in question. The state court adjudication of this claim did not result in a decision that is contrary to, or an unreasonable application of, clearly established federal law, nor was the decision based on an unreasonable application of the facts in light of the evidence presented in state court. Petitioner claims that he should have been permitted to

14

cross-examine Corporal Freehling about whether Reischman had ever been charged with any crimes involving the victim's murder. He claimed it was relevant in that it cast doubt on the hypothetical scenario Freehling posed to Petitioner regarding Reischman being the principle actor.

This issue was addressed by the Superior Court in the direct appeal following his second trial. The court cited to relevant Pennsylvania law and statutory authority finding that a co-felon's acquittal is irrelevant and therefore inadmissible to prove a defendant's innocence. In applying such precedent, it reasoned that the fact that a co-felon was not charged was irrelevant to prove Petitioner's innocence. (Doc. 12, Ex. V at 20- 23.) This reasoning is not contrary to or an unreasonable application of federal law and no error was committed in this decision by the Superior court to preclude Petitioner's attempt to show his alleged co-felon was not charged with any crime surrounding the murder of the victim. See generally United States v. Sanders, 95 F.3d 449, 454 (6th Cir. 1996).

The remaining grounds in the petition to be addressed, Grounds 13 - 16, all set forth ineffective assistance of counsel claims. The "clearly established federal law" applicable to these claims is the familiar two-pronged inquiry the United States Supreme Court articulated in Strickland v. Washington, 466 U.S. 668, 688 (1984): (1) was counsel's performance deficient, and (2) did the deficient performance prejudice the defense? Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. See also Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992)("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different."). On habeas corpus review, the pertinent inquiry is whether the state court decision is contrary to or an objectively unreasonable application of Supreme Court precedent. Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004).

Petitioner advances no argument that the Superior Court decision affirming the denial of

15

PCRA relief is contrary to extant United States Supreme Court precedent. In this regard, Petitioner does not maintain that the ineffective assistance test applied by the state court is inconsistent with the test established in Strickland and developed in its progeny. Furthermore, there does not appear to be any Supreme Court case that found ineffective assistance under circumstances indistinguishable or even similar to those presented here. Our Court of Appeals has held that "a state court decision that applied the Pennsylvania test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent." Rompilla, 355 F.3d at 250, citing Werts v. Vaughn, 228 F.3d 178, 202-04 (3d Cir. 2000), cert. denied, 532 U.S. 980 (1987). The Pennsylvania Superior Court applied the governing Pennsylvania test in this case, and its decision, therefore cannot be regarded as "contrary to" Supreme Court rulings.

The dispositive question, then, is whether any of the Superior Court's rulings at issue here reflect an unreasonable application of the Strickland test. To carry his burden, Petitioner "must demonstrate that 'the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland.'" Rompilla, 355 F.3d at 250.

In the instant case, Petitioner's first three claims of ineffective assistance of counsel all focus on suppression issues and have been previously raised and decided before the Pennsylvania courts to finality. Petitioner attempts to bring these suppression issues before this court in the context of ineffective assistance of counsel claims. Determinations have already been made on these underlying issues and found to be without merit. As such, Petitioner may not relitigate them as ineffective assistance of counsel claims. Further, the state PCRA court and appellate court opinions as set forth in Document 12 Exhibits EE and GG are not based on an unreasonable application of the facts in light of the evidence presented in state court.

The final ineffective assistance ground asserts that counsel improperly advised Petitioner to testify at trial where his testimony was allegedly contradictory to the theory of the case that

16

Reischman (the co-felon) had committed the crimes alone.  Petitioner claims that when he testified on his own behalf his testimony contradicted this theory because it established that he was with Reischman at Shane's Flight Deck on the night in question, and Reischman was never gone from Petitioner's presence at the bar for more than thirty (30) minutes.  (Doc. 12, Ex. DD, Amended PCRA Pet. at unnumbered p. 11.)  Petitioner contends that based upon this testimony, the jury could conclude that either he was lying or that he was with Reischman all night.  As such counsel's strategy is unreasonable when arguing to the jury that Reischman was the sole perpetrator.

This court finds that the state court decision rejecting Petitioner's claim, evaluated objectively and on the merits, did not result in an outcome that cannot reasonably be justified under Strickland.  A PCRA hearing was conducted wherein both Petitioner and his counsel testified.  (Doc. 12, Ex. J.)  A review of this transcript supports the state court's finding that counsel consulted with Petitioner about taking the stand prior to his doing so, and the possible ramifications.  (Id. at 17.)  The state court finding that counsel's decision to present Petitioner as a witness was reasonable.  The testimony from the hearing supports the finding that both reasoning and investigation on the part of counsel took place before making the strategic decision to have Petitioner testify in the hopes of furthering the "alternative suspect" theory of the case that Reischman committed the act alone.  The analysis of the testimony from the PCRA hearing as set forth by the PCRA court (Doc. 12, Ex. EE at pps. 10 - 11) fully supports the Superior Court's finding that counsel was reasonable in his belief that the Petitioner should testify, as it suggested there was still a window of opportunity where Reischman could have committed this offense alone.  (Id., Ex. J at 23.)  Accordingly, this ineffective assistance claim is without merit.

For all of the foregoing reasons, the instant petition for writ of habeas corpus will be denied.  An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TIMOTHY PATRICK McENANY, :
:
    Petitioner :
:
v. : CIVIL NO. 3:CV-05-1160
:
DAVID DiGUGLIELMO, : (Judge Kosik)
:
    Respondent :

**O R D E R**

**NOW, THEREFORE, THIS 24th DAY OF APRIL, 2007,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The petition for writ of habeas corpus is **DENIED**.

2. The Clerk of Court is directed to mark this matter **CLOSED**.

3. There is no basis for the issuance of a certificate of appealability.

                                            s/Edwin M. Kosik
                                           United States District Judge